## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kerri L. B., | Case No. 22-cv-3230 (ECT/DTS) |
| Claimant, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi,<br>*Acting Commissioner of Social Security,* | |
| Defendant. | |

## INTRODUCTION

Claimant Kerri L. B. seeks judicial review of the denial of her application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Pl.'s Mtn.; Dkt. No. 9. Her claim was denied initially and on reconsideration. Administrative Record (Admin. Rec.) at 116-193; Dkt. No. 7. She requested and received review by an Administrative Law Judge (ALJ), who determined Claimant was not eligible for benefits. *Id.* at 7-22. The Appeals Council denied Claimant's request for review. *Id.* at 1-3. This action followed.

Claimant makes two arguments: First, she contends the ALJ overlooked her vision-related severe impairments at Step Two of the sequential evaluation process. Pl.'s Br. at 10-12; Dkt. No. 10. Second, Claimant argues the ALJ's residual functional capacity (RFC) determination did not account for all her functional limitations. *Id.* at 12-15. For the reasons explained below, the Court recommends that the Commissioner's decision be affirmed, her Motion for Summary Judgment [Dkt. No. 12] be granted, and Claimant's Motion for Summary Judgment [Dkt. No. 9] be denied.

## BACKGROUND

**I.     Medical History**

Claimant alleges disability beginning July 30, 2019. She has a history of treatment for health impairments including multiple sclerosis (MS), lumbar degenerative disc disease, status post-surgery, obesity, osteoarthritis of the knees, and chronic obstructive pulmonary disease. Admin. Rec. at 13; Dkt. No. 7. Claimant challenges here only the ALJ's evaluation of her optic neuritis, a consequence of her MS diagnosis.

In July 2019, Dr. Collin McClelland diagnosed Claimant with bilateral temporal optic atrophy from previous episodes of bilateral optic neuritis, related to her MS diagnosis. *Id.* at 484-86. He treated Claimant for vision changes, increased blurriness, and eyelid swelling, but declared her "back to baseline" after a month and a half. *Id.* at 484. In March 2020, Claimant noted spells of visual disturbance during a consultation with MS specialist Dr. William Schmalstieg. *Id.* at 476-77. An MRI failed to show any new changes to her eyes, and Dr. Schmalstieg postulated her symptoms may result from prior optic neuropathy. *Id.*

When Claimant saw Dr. Schmalstieg again on March 11, 2021, she revealed that her visual spells had resolved and denied any new changes in her vision. *Id.* at 680. However, on October 6, 2021, Physician's Assistant Phillips evaluated Claimant after an MS flare and noted limitations in near acuity, far acuity, depth perception, and peripheral vision. *Id.* at 792. Finally, at the administrative hearing on October 19, 2021, Claimant noted "constant issues" with her vision, but explained that she manages them with glasses and yearly eye exams. *Id.* at 41. Claimant submitted no record of specific visual examinations or treatment. *Id.* at 17.

## II.     Statutory Framework

Disability under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under Social Security regulations, disability means the impairments are so severe that the claimant is not only unable to engage in previous work but cannot engage in any other kind of substantial gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A). The claimant bears the burden of proving entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a)(1); *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(a). The Commissioner evaluates "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or approximates, a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *Brock v. Astrue*, 674 F.3d 1062, 1064 n.1 (8th Cir. 2012); *see also* 20 C.F.R. § 404.1520(a)(4).

## III.    ALJ's Decision

At Step 1, the ALJ determined that Claimant had worked since her alleged disability onset, but that this work did not rise to the level of substantial gainful activity. Admin. Rec. at 13; Dkt. No. 7. At Step 2, the ALJ found that Claimant had several severe impairments, including MS, lumbar degenerative disc disease, status post-surgery,

3

obesity, osteoarthritis of the knees, and chronic obstructive pulmonary disease. *Id.* Even so, at Step 3 the ALJ found that none of these impairments, alone or combined, met the severity of the impairments listed in 20 C.F.R. § 404. *Id.* at 14-15. At Step 4, the ALJ found that Claimant had the RFC to perform sedentary work, with numerous exceptions related to climbing, balancing, working at heights, operating machinery, and working in extreme heat or cold or around concentrated fumes and dust. *Id.* at 16. In so doing, the ALJ assessed Claimant's MS symptoms, including issues with optic neuritis, blurred vision, and visual concerns limiting driving at night. *Id.* at 16-20. The ALJ determined that Claimant would be unable to perform her past relevant work as a forklift operator. *Id.* at 21. At Step 5, the ALJ concluded that Claimant could perform work that existed in the national economy and identified three occupations suited to her abilities, representing 220,000 jobs in the national economy. *Id.* at 22. The ALJ accordingly denied Claimant's application. *Id.* Claimant now appeals that denial to this Court. Pl.'s Mtn.; Dkt. No. 9.

## ANALYSIS

Claimant contends the ALJ overlooked her vision-related impairments at Step Two of the sequential evaluation process and failed to account for all her functional limitations in the RFC at Step Four. Pl.'s Br. at 10-15; Dkt. No. 10. Upon review of an ALJ's decision, a court has authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (sentence four). The Court must uphold the Commissioner's decision if it is supported by substantial evidence in the record as a whole and is not based on legal error. *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018). Substantial evidence is "less than a preponderance

but . . . enough that a reasonable mind would find it adequate to support the conclusion." *Chismarich*, 888 F.3d at 979 (quotation omitted). The Court "must consider evidence that supports and detracts from the ALJ's decision." *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* (quotation omitted). Substantial evidence establishes that the ALJ properly considered and incorporated Claimant's vision-related impairments when evaluating her limitations due to MS and determining her RFC. Thus, this Court recommends that the Commissioner's decision be affirmed.

**I.    Severe Impairments at Step 2**

First, Claimant argues that the ALJ failed to categorize her optic neuritis as a severe impairment at Step 2. At Step 2, the Claimant must show (1) she is not working because she suffers from an impairment, (2) the impairment is severe, and (3) she has suffered or expects to suffer from the impairment for at least twelve months. *See* 20 C.F.R. §§ 404.1508, 404.1509, 404.1520. Step 2 is designed to weed out individuals whose impairments are so minimal that they cannot possibly meet the statutory definition of disability. *See Bowen v. Yuckert*, 482 U.S. 137, 156 (1987). Accordingly, if the ALJ finds at least one severe impairment and continues through the sequential evaluation, the ALJ has not committed reversible error. *See id.* Failing to assess a claimed severe impairment "is harmless if the claimant makes a threshold showing of any 'severe' impairment [and] the ALJ continues with the sequential evaluation process and considers all impairments, both severe and nonsevere." *Snyder v. Colvin*, No. 12-cv-3104, 2013 WL 6061335, at *9 (D. Minn. Nov. 18, 2013).

5

Claimant asserts that her optic neuritis met the minimum threshold to be considered a severe impairment and remand is warranted on this basis alone. Pl.'s Br. at 11-12; Dkt. No. 10. However, Claimant's optic neuritis results from her MS diagnosis, which the ALJ categorized as a severe impairment at Step 2. *See* Admin. Rec. at 13; Dkt. No. 7. Therefore, the ALJ necessarily considered Claimant's vision limitations when categorizing her MS as severe. Further, even if the ALJ erred in failing to individually categorize optic neuritis as a severe impairment at Step 2, any such error was harmless because the ALJ identified other severe impairments and continued with the sequential evaluation process. *See id.* Thus, the ALJ adequately evaluated Claimant's optic neuritis at Step 2.

**II.   RFC determination of Claimant's limitations**

Second, Claimant alleges her vision issues constitute an impairment so severe that excluding them from her RFC constitutes reversible error. Pl.'s Br. at 8; Dkt. No. 10. When crafting an RFC, the ALJ considers all relevant evidence in the record, including medical opinions, prior administrative medical findings, and the claimant's own descriptions of her limitations. 20 C.F.R. §§ 404.1520c, 416.945(a); *see Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). An ALJ's analysis should demonstrate a consideration of all impairments, both severe and non-severe, in arriving at the RFC. *See Mark E. v. Kijakazi*, No. 20-cv-2047, 2021 WL 6066260, at *9 (D. Minn. Dec. 7, 2021). ALJs are not required to give a specific level of deference to any type of evidence but must assess all opinions' persuasiveness, based on supportability and consistency. 20 C.F.R. § 404.1520c(a). As a result, an ALJ may discount or disregard a Claimant's description of her limitations if they are inconsistent with the evidence as a whole.

*See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir.2001) ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [the court] will defer to its judgment even if every factor is not discussed in depth."). The reviewing court is then tasked with harmonizing the ALJ's decision with the record, "view[ing] the record in the light most favorable to that determination." *Chismarich*, 888 F.3d at 980 ("[W]e may neither pick nits nor accept an appellant's invitation to rely upon perceived inconsistencies.").

The ALJ adequately evaluated and incorporated Claimant's limitations into the RFC. The ALJ found that Claimant had the RFC to perform sedentary work, with numerous exceptions related to climbing, balancing, working at heights, operating machinery, and working in extreme heat or cold or around concentrated fumes and dust. Admin. Rec. at 16; Dkt. No. 7. In so doing, the ALJ assessed Claimant's MS symptoms, including issues with optic neuritis, blurred vision, and visual concerns limiting driving at night. *Id.* at 16-20.

After reviewing the medical records and Claimant's subjective assertions, the ALJ conceded that Claimant experiences the alleged visual impairments but determined that the claimed "intensity, persistence, and limiting effects of these symptoms" was inconsistent with the record. *Id.* at 16. The following evidence supports the ALJ's determination that Claimant's visual impairments do not rise to the level she claims. First, Claimant told Dr. Schmalstieg about her spells of visual disturbance in 2020, but she also revealed to him that those spells had resolved at their next appointment in 2021. *Id.* at 476-77, 680. At that time, she denied any new change in her vision. *Id.* at 680. Second, outside the discussions of her vision in relation to MS, Claimant submitted no

7

record of specific visual examinations or treatment. *Id.* at 17. Third, she asserted at the administrative hearing that her vision issues are "constant," but also that she can manage them with glasses and yearly eye exams. *Id.* at 41. Finally, Claimant worked two jobs after the alleged onset date of her disability, demonstrating that her vision did not preclude her ability to work. *Id.* at 17. For these reasons, the ALJ concluded the MS-related environmental limitations in Claimant's RFC appropriately addressed her visual limitations.

Claimant argues the ALJ wrongfully inferred a lack of visual limitations from her medical records. Pl.'s Br. at 14-15; Dkt. No. 10. For example, Claimant's records from Dr. Schmalstieg show she asserted no vision changes from one appointment to the next, but Claimant argues this does not imply her vision had no prior impairments. *Id.* at 15. Similarly, though Dr. McClelland declared Claimant "back to baseline," she argues this declaration is meaningless without understanding that her "baseline" has its own limitations. *Id.* She claims the ALJ made assumptions about Claimant's limitations from these statements. This argument fails for two reasons: First, reports show Claimant has objective visual acuity measures of 20/30 with glasses correction. Admin. Rec. at 484; Dkt. No. 7. Second, she has been able to work since the onset of her vision impairments in 2019, implying that even at her "baseline," she is able to work. *Id.* at 17.

Substantial evidence supports the ALJ's decision to omit additional, specific vision limitations from the RFC. The ALJ adequately incorporated Claimant's severe and non-severe limitations and explained why she deemphasized Claimant's alleged vision impairments. This Court is tasked with harmonizing the ALJ's decision with the record, rather than accepting a claimant's invitation to rely on perceived inconsistencies.

*See Chismarich*, 888 F.3d at 980. In this case, as discussed above, substantial evidence in the record as a whole supports the Commissioner's RFC determination. As a result, this Court recommends that the Commissioner's decision be affirmed.

## RECOMMENDATION

Based on the record, memoranda, and proceedings herein, and for the reasons stated above, the Court RECOMMENDS THAT:

1. Plaintiff's Motion for Summary Judgment, (Dkt. No. 9), be **DENIED.**

2. Defendant's Motion for Summary Judgment, (Dkt. No. 12), be **GRANTED**.

Dated: November 3, 2023

      s/David T. Schultz
DAVID T. SCHULTZ
U.S. Magistrate Judge

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).